## In re ISKOVITZ.

(District Court, N. D. Texas, Dallas Division. June 23, 1926.)

No. 2269.

1. **Bankruptcy ⬤➟414(1)—Burden of explaining disappearance of assets in bankrupt's possession before bankruptcy is on bankrupt, on objections to discharge.**

Though specification opposing bankrupt's discharge must show with certainty complaint made against bankrupt and be supported by unmistakable evidence, bankrupt has burden of explaining disappearance of assets in his possession before bankruptcy.

2. **Bankruptcy ⬤➟414(3)—Specifications opposing bankrupt's discharge because of concealment of assets may be proved by circumstantial evidence.**

Bankrupt's creditors, opposing his discharge, are not bound to prove exact hiding place of concealed property, nor its exact value, nature, nor method or time of taking, but specifications may be proved by circumstantial evidence having probative force in criminal proceeding.

3. **Bankruptcy ⬤➟414(3).**

Evidence *held* insufficient to establish concealment of assets by bankrupt and false oaths with reference thereto.

4. **Bankruptcy ⬤➟418(1).**

Bankrupt's discharge does not defeat creditors' right to recover fraudulent preference, or such property as is recoverable under the law.

5. **Bankruptcy ⬤➟288(1).**

Facts *held* to furnish basis for such colorable title in bankrupt's wife to money in her possession as required direct suit, rather than plenary order.

6. **Bankruptcy ⬤➟407(3), 408(3).**

Fraudulent concealment will not defeat right to discharge, unless bankrupt has secret interest in property, and it is insufficient that property was conveyed in fraud of creditors.

In Bankruptcy. In the matter of Marcus Iskovitz, bankrupt. On bankrupt's application for discharge and to enter turn-over order. Discharge granted.

Emil Corenbleth, of Dallas, Tex., for bankrupt.

Fred J. Dudley, of Dallas, Tex., for contesting creditors.

ATWELL, District Judge. This voluntary bankrupt filed his petition on November 23, 1925. Roughly it shows debts in the amount of $48,000, and assets to the amount of $61,000, of which $28,500 are claimed as exempt. The trustee received less than $30,000 in property, which netted an estate much less than that amount. Early in February, 1926, the bankrupt asked for a discharge. The application went the usual round, and while before the master objections made by certain creditors were heard, and testimony offered. The master recommends a discharge in a certificate filed with the clerk on June 15, 1926.

Without pausing to particularize, the objecting creditors specify the concealment of approximately $10,000 in merchandise, approximately $3,000 in cash, and certain false oaths with reference to such cash and merchandise. The concealment of the merchandise is asked to be presumed from the fact that the bankrupt made an alleged exposure of his financial condition to a commercial agency in the spring of 1925, which showed a safely solvent condition, and from a report of an auditing company which theoretically assumes concealment from the difference in dollar values of merchandise bought and merchandise sold. To the mind of the court should be added the rather unsatisfactory testimony of the bankrupt himself with reference both to the sale of his merchandise and to the cash which was found in possession of his wife.

With reference to the alleged concealment of cash which the proof shows unmistakably to have been paid by the bankrupt to his wife within four months of the filing of the petition, it must be said that such payments were at no time and in no respect concealed. Upon an examination to disclose them, she maintains that she had certain separate property, which at one time was in the possession of Victor Hexter, Esq., of Dallas, Tex., who does not seem to have testified before the master, and that this cash she subsequently collected from Mr. Hexter, and placed in the City National Bank; that when her husband needed some money she pretended to him that she was placing her jewels as collateral. The note which the two made to the bank was offered in evidence.

[1, 2] 1. While it is true that a specification must show with certainty the complaint made against the bankrupt, and while it is equally true that the creditors should support such specification by evidence that is unmistakable, still it is also true that a bankrupt has the burden of explaining the disappearance of assets shown to have been in his possession before his bankruptcy. It likewise must be true that the creditors are not bound to put their fingers upon the exact hiding place of the concealed property, nor are they bound to prove its exact value, and its exact nature, nor the exact method of its taking, nor the exact time. The specifications may be proved by circumstantial evidence, the same as

would have probative force in a criminal proceeding.

[3] There is no direct specification laid upon the written statement as to the financial condition. The making of the report is merely offered as an additional circumstance. I believe that the record shows that the bankrupt continued, however, after the making of the financial statement, to pay bills that he had contracted, and, to discount them. This he did up as late as August or September, 1925. Upon this specification, and those collateral to it, I find with the bankrupt. I should add that I do so reluctantly. I am fearful that there is fraud in the matter, but I have been unable to place my finger upon evidence of sufficient dignity to justify a different finding.

[4, 5] 2. As to the cash which the wife testifies is in her possession. There may be no debate among those learned in the law that a discharge to the bankrupt will not defeat the right of the creditors, in a proper way, to recover such preference, or such property as may be found to be recoverable under the law. The wife maintains her right to the cash. The facts hinted at in the record, namely, the note to the bank, the lending of certain funds by Mr. Hexter, and the hypothecation of jewels, may be said to furnish the basis for such a colorable title as will demand a direct suit rather than a plenary order. Harrison v. Chamberlin, 46 S. Ct. 466, 70 L. Ed. —— (U. S. Supreme Court, May 1926); May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. Ed. 870. In the Harrison Case the court used this language: "Fair doubt and reasonable room for controversy" is not merely colorable, and cannot be reached by a summary order. The restraining order issued by Judge Meek on the 19th of April, 1926, and which is continued in force, without prejudice to the right of Yetta Goldstein, the wife, to move for a dissolution, prevents her, under the penalty of a contempt proceeding, from disposing of or secreting any of the property.

[6] The case of In re Dauchy, 130 F. 532, 65 C. C. A. 78, by the Circuit Court of Appeals for the Second Circuit, through the expression of Circuit Judge Coxe, is in line with other authorities to the effect that a fraudulent concealment, in order to defeat the right to a discharge, must have the element of a secret interest by the bankrupt in the property. It is not sufficient that the property was conveyed in fraud of creditors; it must still, in fact, be the property of the bankrupt's estate.

A discharge will be granted upon the presentment of the usual formal order.